**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ITEX, INC. and MF & H TEXTILES, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MOUNT VERNON MILLS, INC., ) <br> CARHARTT, INC. and ) <br> VF IMAGEWEAR, INC., ) <br> ) <br> Defendants. ) <br> _____ ) <br> ) <br> ITEX, INC. and MF & H TEXTILES, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WESTEX, INC., KING AMERICA ) <br> FINISHING, INC., WESTERN PIECE ) <br> DYERS & FINISHERS, INC., WORKRITE ) <br> UNIFORM COMPANY, INC., VF ) <br> IMAGEWEAR, INC., CINTAS, UNIFIRST, ) <br> G & K SERVICES, ARAMARK, and ) <br> GREENWOOD MILLS, INC., ) <br> ) <br> Defendants. ) | No. 08 C 1224 <br><br> Judge Rebecca R. Pallmeyer <br><br><br><br><br><br><br><br> No. 05 C 6110 <br><br> Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Itex, Inc. ("Itex") and MF&H Textiles, Inc. ("MF&H") are manufacturers of flame-retardant fabrics. In 1995, Plaintiffs obtained a patent for their cotton blend fabrics entitled, "Long Wear Life Flame-Retardant Cotton Blend Fabrics." U.S. Patent No. 5,468,545 ("the '545 Patent"). Defendants are twelve corporations that manufacture, sell and/or rent flame-retardant fabrics. In two separate lawsuits, Plaintiffs charge Defendants with infringing the '545 Patent by manufacturing or selling certain flame-retardant cotton blend fabrics that infringe at least one of the patent's claims. The parties presented competing interpretations for several terms in Claim 1 of the '545 patent, and on July 10, 2010, Judge Andersen issued an opinion setting forth the court's

construction of those terms. *Itex, Inc. v. Westex, Inc.*, No. 05 CV 6110, 2010 WL 2927474 (N.D. Ill. July 20, 2010). Defendants have moved for partial reconsideration, requesting that this court modify or reconsider Judge Andersen's construction of a specific term found in Claim 1: "cotton fabrics." For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

In October 2008, Plaintiffs filed their Second Amended Complaint alleging that Defendants VF Imagewear, Inc. ("VF"), Mount Vernon Mills, Inc. ("Mount Vernon") and Carhartt, Inc. (Carhartt), infringed the '545 Patent by making or selling flame-retardant cotton blend fabrics. In an earlier lawsuit, Plaintiffs have also charged a second set of Defendants—Westex, Inc. ("Westex"), King America Finishing, Inc. ("King"), Western Piece Dyers & Finishers, Inc. ("Western"), Workrite Uniform Company, Inc. ("Workrite"), VF Imagewear, Inc. ("VF"), Cintas ("Cintas"), Unifirst ("Unifirst"), G & K Services ("G&K"), Aramark ("Aramark"), Greenwood Mills, Inc. ("Greenwood")— with infringing the '545 Patent.[1] Both cases were originally filed before Judge Andersen, who conducted a *Markman* hearing in December 2009 on several disputed terms within Claim 1 of the '545 Patent. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). By Executive Order dated October 29, 2010 [256], these cases were reassigned to this court, and the court conducted a further *Markman* hearing in February 2011 on the single disputed term now at issue: "cotton fabrics." This opinion will therefore presume the reader's familiarity with the general background of the '545 patent as described in Judge Andersen's July 10, 2010 Memorandum Opinion and Order, *see Itex, Inc. v. Westex, Inc.*, No. 05 CV 6110, 2010 WL 2927474 (N.D. Ill. July 20, 2010), but the facts relevant to the pending motion are briefly summarized below.

---

[1] In 2009, Judge Denlow consolidated these cases for purposes of claim construction and discovery. [Doc. No. 119.] Defendants in both cases have joined Defendant Mount Vernon's instant Motion to Modify or Reconsider the Court's Claim Construction Ruling. [Doc. No. 285.] The lead case in the series is *Itex, Inc. v. Westex, Inc.*, No. 05 CV 6110 ("the 2005 case").

As noted above, Plaintiffs patented certain chemically-treated cotton blend fabrics. Generally speaking, woven cotton blend fabrics[2] are produced by interlacing two distinct sets of yarns—in this case: cotton and thermoplastic fibers—to form an elongated fabric. (Markman Hearing Tr. at 7.) Adding thermoplastic or synthetic fibers, such a nylon or polyester, to cotton fabric makes the fabric more durable because thermoplastic fibers are more resistant to abrasion and natural wear and tear. (*Id.* at 11.) Blending cotton fabric with synthetic fibers generates flammability concerns, however. Pure cotton fabric is naturally flammable, but it can be rendered flame-resistant when it is treated with a chemical compound, tetrakis phosphonium (hereinafter, "THP/urea compound"), and an ignited fabric so treated will self-extinguish once the flame source is removed.[3] (*Id.* at 11.) Thermoplastic fibers are also highly flammable but, unlike cotton fibers, cannot be treated with the conventional THP/urea compound. In the past, companies in the textile industry attempted to address the problem by either (1) treating cotton blend fabric as if it were 100% cotton, using the typical level of the THP/urea compound, or (2) increasing the level of chemicals in the cotton fibers only, in the hope that the high level of flame-retardant chemicals overall would compensate for the thermoplastic fibers. Neither of these approaches was fully satisfactory. The former solution was not adequate because the flame-retardant chemicals washed off of the thermoplastic fibers, and the latter solution produced a fabric that was stiff and uncomfortable. ('545 Patent, col.1 ls.30-31.) Plaintiffs' invention sought to solve this problem by producing a cotton blend fabric in which only the cotton fibers are flame-retardant and the

---

[2] The patent at issue relates only to woven fabrics.

[3] The complete flame-retardant treatment process involves running the fabric through a chemical bath composed of high concentrations of the THP/urea compound; squeezing the fabric to remove some of the bath liquid while permitting the fabric to retain the desired amount of chemical compound (known as "wet pickup"); drying the fabric to the desired percentage of moisture; and ammoniating and oxidizing the fabric to cure the pre-polymer into the cotton fibers, which prevents the flame-retardant chemicals from being washed out during laundering. (Markman Hearing at 10.) Once the treatment process is completed, the fabric can be tested in order to determine whether the level of chemicals present are adequate.

thermoplastic fibers are limited to no greater than thirty percent of the overall fabric. Presumably, the flame-retardant chemicals will continue to wash off of the non-cotton fibers, but overall, the resulting softer fabric will remain flame-retardant because it contains a sufficient level of "phosphorous-containing polymer to retard the burning of both the cotton and the non-flame-retardant thermoplastic fibers."[4] (Pls.' Claim Construction at 6.)

The parties asked Judge Andersen to construe several disputed terms in Claim 1 of the '545 Patent. In Claim 1, the patent claims:

1 - Wash resistant durable fabrics, including woven fabrics comprising:

    a)    50 to 95% cotton fibers; 5-30% non-flame-retardant thermoplastic fibers in which warp yarns for woven fabrics are comprised of 50 to 95% cotton and 5 to 30% non-flame-retardant thermoplastic fibers;

    b)    said fibers being uniformly treated with a durable flame retardant of a prepolymer of urea and tetrakis (hydroxymethyl) phosphonium salt which has been applied, ammoniated and oxidized in a manner such that

    c)    after exposure to five washes and twenty-four hours emersion in boiling water

        i)    the cotton fabrics burn less than 15cm (6") at cut edges and

        ii)    retain at least 2.0% and no more than 3.0% phosphorous by weight of fabric.

('545 Patent, col.8 ls.29-44.) The only term at issue for reconsideration is the term "cotton fabrics" in Part (c)(i). In their claim construction brief, Defendants argued that term "cotton fabrics" was ambiguous because the term was not identified in any preceding claim language, and a person of ordinary skill in the art could not reasonably ascertain the meaning of the term. (Defs.' Claim

---

[4] The court was unclear whether Plaintiff's invention involves chemically treating the cotton yarns before the blending process, or treating the fabric as a whole with the THP/urea compound after the cotton fibers are blended with the thermoplastic fibers. During the *Markman* hearing, however, counsel explained that the industry standard involves treating the fabric in its entirety instead of treating the fibers individually. (Markman Hearing at 10, 13-14.)

Construction at 39-40.) Plaintiffs initially claimed that the term "cotton fabric" was synonymous with the preceding term, "woven fabric"; in a later submission, they urged that using the term "cotton fabrics" was an "obvious typographical error" which "clearly should have been 'woven fabrics.'" (Pls.' Claim Construction at 12; Pls.' Rebuttal at 40.) Judge Andersen agreed that Plaintiffs must have meant "woven fabrics" when they instead used the expression "cotton fabrics" in Part (c)(i). He found that the terms were not synonymous—"as 'cotton fabrics' are different from 'woven fabrics' that contain both cotton and thermoplastic fibers"—but he nevertheless found it "abundantly clear" that Plaintiffs must have meant for the term "cotton fabrics . . . to have consistent meaning with the term 'woven fabrics' used at the beginning of Claim 1." *Itex, Inc.*, 2010 WL 2927474, at *8.

Defendants request reconsideration of that claim construction order in two respects. First, they argue that the court committed a manifest error of law by construing "cotton fabrics" in Claim 1 to mean "woven fabrics." Second, Defendants contend that the court should instead construe the term to have its ordinary meaning: fabrics made only from cotton fibers. For the reasons explained here, the court agrees with Defendants.

## DISCUSSION

Motions for reconsideration serve the limited function of correcting manifest errors of law or fact, or to consider newly discovered material evidence. *Cnty. of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819 (7th Cir. 2006). While such a motion "enables a district court to correct its own errors," district court rulings are not "mere first drafts" subject to revision absent a showing of extraordinary circumstances. *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995); *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). In the context of patent cases, however, "district courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010) (and *cases cited therein*).

**A.    "Cotton Fabrics" construed as "Woven Fabrics"**

Defendants argue, first, that Judge Andersen's construction of the term "cotton fabrics" to mean "woven fabrics" is a manifest error of law because the court's construction did not attribute the ordinary and customary meaning of the term; instead the court rewrote the term based on what the Plaintiffs likely intended in Claim 1. Plaintiffs urge that the claim language itself demonstrates that their invention includes thermoplastic fibers, not only pure cotton fibers. (Pls.' Opp. to Def.'s Mot. to Reconsider the Claim Construction Ruling (hereinafter, "Pls.' Opp.") at 5.) Plaintiffs therefore contend that Judge Andersen's construction of "cotton fabrics" as "woven fabrics" did not change the term, but merely "looked to the words of the claim for context." (Pls.' Opp. at 6.)

In support of Judge Andersen's construction, Plaintiffs note that the actual term in dispute is not "cotton fabrics," but "*the* cotton fabrics." Where the word "the" is used in drafting, Plaintiffs urge, it must refer to an element previously established in a claim—in this case: "wash resistant durable fabrics." *See* '545 Patent, col.8 l.1. Hence, the preceding claim language "makes clear that the invention includes thermoplastic fibers, not just cotton fibers." (Pls.' Opp. 5.) Plaintiffs' suggestion that the term "the cotton fabrics" in Claim 1 was intended to include cotton blend fabrics has some appeal, given that other language in the patent specification refers to such blended fabrics. And, as Plaintiff's note, a person of ordinary skill in the art reads claim terms in context of the particular claim and of the entire patent. *ICU Medical, Inc. v. Alavis Medical Systems, Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)).

Although this very generous interpretation of the term "cotton fabrics" is convenient, the court reluctantly declines to adopt it. The parties agree that the terms "cotton fabrics" and "woven fabrics" are not synonymous and that the term "cotton fabrics" refers to the composition of the fabric, while the term "woven fabric" refers to the method of manufacturing. Thus, the term "cotton fabrics" could refer to material that is woven or non-woven, and "woven fabrics" might include non-

cotton material. (Defs.' Mot. at 2.) The court recognizes that the invention at issue assumes that both cotton and thermoplastic fibers are being used. The court disagrees, however, that this requires the conclusion that the term "cotton fabrics" should be construed to mean "woven fabrics."

However appealing it might be to do so, controlling Federal Circuit law expressly prohibits a court from rewriting patent claims. Both seminal cases cited by Defendants—*Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336 (Fed. Cir. 2002) and *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004)—hold that "courts may not redraft claims, whether to make them operable or to sustain their validity." *Id.* at 1374 (and *cases cited therein*). In *Allen Engineering Corp.*, the plaintiff patented a motorized machine used to smooth over newly poured concrete surfaces. 299 F.3d at 1342. Several claims of the patent described "'its gear box only in a plane perpendicular to said biaxial plane,'" whereas the specification stated: "'gearbox 85A cannot pivot in a plane perpendicular to the biaxial plane.'" *Id.* at 1349 (quotation omitted). The plaintiff argued that the court should reject the actual claim language and understand the term "perpendicular" to instead mean "parallel," but the Federal Circuit declined to rewrite the claim to preserve its validity. *Id.*

Similarly, in *Lamb-Weston*, a patent covering a process for producing a certain type of baked dough included the step of "heating [the dough] to a temperature in the range of about 400 degrees F. to 850 degrees F." 358 F.3d at 1371-72. If the dough were heated to such a temperature range while inside an oven, however, it would burn, and thus, the patentee asked the court to interpret that claim as if it had read "'heating the . . . dough at a temperature in the range of,' i.e., to apply the heating requirement to the place where the heating takes place (the oven) rather than the item being heated (the dough)." *Id.* at 1373-74. The Federal Circuit rejected the patentee's construction of the claim, noting that "'a nonsensical result does not require the court to redraft the claims of the . . . patent.'" *Id.* at 1374 (quoting *Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999)).

In this case, the court must construe the term "cotton fabrics" as written, "not as the patentees wish they had written it." *Lamb-Weston*, 358 F.3d at 1374. Defendants have accordingly established an error of law requiring reconsideration of the term "cotton fabrics."

**B.     "Cotton Fabrics" construed as "Fabrics Made Only From Cotton Fibers"**

Plaintiffs contend that an alternative construction of the term "cotton fabrics" is "wash resistant durable fabrics comprising cotton"—a phrase introduced at the beginning of Claim 1. (Pls.' Bench Brief on the Construction of the Term the Cotton Fabrics at 1.) Defendants maintain that the proper construction of "cotton fabrics" is "fabrics made from only cotton fibers." (Defs.' Mot. at 2.) Plaintiffs argue that Defendants have offered no support for their contention that "cotton fabrics" has only one possible meaning, but the court disagrees.

"In the absence of an express intent to impart a novel meaning to the claim terms, the words [of a patent] are presumed to take on the ordinary and customary meanings attributed to them by those of ordinary skill in the art." *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 326 F.3d 1215, 1220 (Fed. Cir. 2003). A patentee may, of course, "act as his own lexicographer to specifically define terms of a claim contrary to their ordinary meaning," *Process Control Corp.*, 190 F.3d at 1374, but there is no indication in Claim 1 of the '545 Patent, its specification, or the prosecution history that would suggest Plaintiffs meant the term "cotton fabrics" in Part (c)(i) to mean "wash resistant durable fabrics comprising cotton."

When faced with a disputed term, the specification "is the single best guide" to interpreting the meaning of the term. *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In this case, Plaintiffs consistently distinguished the term "cotton fabrics" from "cotton blend fabrics," and used "cotton fabric" synonymously with the term "100% cotton." Thus, the Background section of the specification explains: "Conventional single step flame-retardant processes used for cotton fabrics are not commercially viable for cotton/thermoplastic fabrics." ('545 Patent, col.1 ls.26-28.) Explicitly distinguishing the processes

necessary for "cotton/thermoplastic" fabrics in comparison to strictly "cotton fabrics" suggests a meaningful difference between fabrics. Similarly, in the Detailed Description of the Invention, several references are made to "cotton fabrics," and the term is used synonymously with "100% cotton"; whereas "cotton/thermoplastic fabrics" are distinguished. For instance, the specification states:

> Too little thermoplastic fiber will result in no improvement in wear life compared with 100% cotton fabrics. . . . The introduction of thermoplastic fibers into cotton fabrics makes it very difficult to flame-retardant treat the fabrics. . . . The product described herein is made by uniform treatment of cotton/thermoplastic fibers with flame retardant chemicals.

('545 Patent, col.2 ls.25-27; 35-37; 49-51.) At no point does the specification use the term "cotton fabrics" synonymously with the terms "cotton blend fabrics," "cotton/thermoplastic fabrics," or "wash resistant durable fabrics comprising cotton."

Finally, as Defendants observe, the inventors themselves amended Claim 1 to change the term at issue from "the fabrics" to "the cotton fabrics" during prosecution of the '545 patent. (Prosecution History at 23, 41, Ex. A to Westex Defs.' Resp. to Pls.' Bench Brief.) The Federal Circuit has held that courts should consider prosecution history in claims construction because, like the specification, prosecution history reflects the patentee's "attempt[] to explain and obtain the patent," and it therefore "provides evidence of how the [Patent Office] and the inventor understood the patent." *AWH Corp.*, 415 F.3d at 1317 (citing *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992)). In this case, if the term "the cotton fabrics" were a typographical mistake, as Plaintiffs initially suggested, then they could readily have corrected it during prosecution or during the reexamination periods. Such opportunities for revision during prosecution allowed Plaintiffs to write the terms in Claim 1 with precision, just as they had done in other places in the specification.

In response, Plaintiffs claim that when they meant to use the term "100% cotton," they stated so explicitly, and the term "cotton fabrics" does not necessarily mean fabrics made only from cotton fibers. As Defendants point out, however, if every use of the term "cotton fabrics" included any

9

fabrics merely comprising cotton (rather than cotton-only), then including the word "blend" in the term "cotton blend fabrics" would be superfluous. (Markman Hearing Tr. at 25.) Furthermore, if the court were to construe the term "cotton fabrics" to mean "wash resistant durable fabrics comprising cotton," then that term would encompass a fabric having any amount of cotton fiber, as the word "comprising" means "including the following elements but not excluding others." (Pls.' Bench Brief at 3; *see also Cias, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007) ("In the patent claim context the term 'comprising' is well understood to mean 'including but not limited to.'")).

Based on the court's reading of Claim 1, Plaintiffs certainly could have chosen another term instead of "cotton fabrics"—such as, "cotton blend fabrics" or "cotton/thermoplastic blend fabrics"—that would have been more consistent with other terms in the patent specification and the nature of the invention itself. Or, Plaintiffs could have eliminated the word "cotton" entirely from Part (c)(i). Plaintiffs did not do so. Thus, absent any finding of an intent to impart a different meaning to the term "cotton fabrics," the court concludes that the term must be given its ordinary meaning and construed as it is used consistently throughout the patent: as 100% cotton or fabrics made from only cotton fibers.

## **CONCLUSION**

For the reasons stated above, Defendants' motion to modify or reconsider [148] is granted. The term "cotton fabrics" in the '545 patent is construed in accordance with the foregoing.

ENTER:

Dated: June 20, 2011

_____
REBECCA R. PALLMEYER
United States District Judge